UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GREGORY REIMER,<br><br>    Plaintiff,<br><br>    v.<br><br>CORPORACION DE VIAJES MUNDIALES S.A., et al.,<br><br>    Defendants. | Case No. 14-cv-00147-EDL<br><br>**ORDER GRANTING MOTION TO DISMISS** |

Before the Court is Defendant Costa Rican Internet Services' ("CRIS") motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), or in the alternative, on the basis of *forum non conveniens.* For the reasons stated at the October 14, 2014 hearing and in this Order, Defendant's motion to dismiss is granted.

**Allegations from the complaint**

Plaintiff sustained severe injuries from participating in a "zip-line" activity in Costa Rica on August 23, 2012. Compl. ¶¶ 1, 2. While Plaintiff was on the "tarzan swing" ride, the swing broke and Plaintiff fell approximately forty feet to the ground. Compl. ¶ 2. Plaintiff's injuries from the fall included "a closed-head injury with intracranial bleeding causing temporary left-side paralysis, along with permanent debilitating defects in cognition, memory, executive function, and other symptoms consistent with a traumatic brain injury." Compl. ¶ 10.

Plaintiff alleges that the zip-line activity was "arranged by and purchased through" Defendant CRIS and Defendant Costa Rican Vacations ("CRV"). Compl. ¶ 2. CRIS and CRV are in the business of "owning, staffing, managing, supervising and otherwise operating a tour company that marketed, sold, arranged for, designed, outlined, prepared, planned, set up, purchased, hired, and otherwise organized tourist activities for paying customers. . . ." Compl. ¶¶

3, 4.  Plaintiff alleges that he "used the zip line at the direction and on the guidance" of Defendants.  Compl. ¶ 2.

**Supporting evidence**

Anthony Silva is the president of CRIS.  Silva Decl. ¶ 1.  Silva and Casey Halloran founded CRIS in 2001.  Pahlke Decl. Ex. A at 12.  Both employees reside in Costa Rica, and neither travel to California or to any location in the United States to conduct business for CRIS.  Silva Decl. ¶ 5.  CRIS is a treasury management company, which means that it processes credit cards through a payment link on the internet.  Id.

CRIS is incorporated under the laws of Delaware, and while it maintains a mailing address in Florida, it does not otherwise maintain a physical location in the United States.  Silva Decl. ¶ 3.  CRIS maintains its operations in Costa Rica.  Id.  CRIS is not incorporated in California, and is not registered or licensed to do business there.  Id. ¶ 4.  CRIS does not pay taxes in California, does not maintain bank accounts here, and targets no print, television, internet or radio advertising toward California.  Id.  Plaintiff, however, states that CRIS maintains three bank accounts, including one at Wells Fargo in San Francisco.  Pahlke Decl. ¶ 8; Ex. F.  CRIS does not engage in any marketing.  Silva Decl. ¶ 4.  CRIS makes no effort to target California residents over residents of other states or other countries to use its payment link.  Id.  In 2013, for sales within the United States, California was CRIS' largest market, accounting for 21.4% of all sales in the United States.  Pahlke Decl. ¶ 9; Ex. G.

CRIS processes payments for the companies that are part of CRV, that is, World Vacations Corporation and Panama Luxury Vacations.  Pahlke Decl. Ex. A at 42.  CRIS is not looking for new clients.  Id. at 211.  CRIS does not have annual meetings.  Pahlke Decl. Ex. A at 231.  There are no rules or by-laws for the operation of CRIS.  Id. at 231-32.  CRIS's only assets are its bank accounts and its computer.  Id. at 190.  CRIS owns a website, but does not, and has not, used it for any purpose.  Id. at 95-96.

The only contact that an individual has with CRIS is limited to the time the person enters information on a payment link.  Silva Decl. ¶ 6.  After the entry of credit card information, there is no contact between CRIS and the credit card owner.  Id.  CRIS does not send confirmation emails

or letters of acknowledgment. Id. CRIS does not reach out to a credit card owner if the credit card is denied. Id. CRIS's payment link is not interactive. Id. ¶ 7. The payment link is only accessible after a person has decided to purchase a vacation package through a different company. Id. No user can directly contact CRIS. Id. ¶ 10. There is no contact information listed on the payment link. Id. Inquiries need to be directed to the sales associate who booked the travel. Id.

CRV could operate without CRIS, and has done so. Pahlke Decl. Ex. A at 184. However, CRV found that it was more expensive to process payments without CRIS. Id. Silva testified that it was fair to say that by using CRIS, CRV would be able to reduce its overall costs and possibly increase profits. Id. at 185.

The sales associate who assisted Plaintiff in formulating his travel plans is not employed by CRIS. Silva Decl. ¶ 8. CRIS does not employ sales associates or travel agents through whom travel arrangements can be made. Id. CRIS neither encourages nor recommends any vacation, excursion or accommodation of any entity with which individuals make reservations in Costa Rica, as stated by CRIS' express terms and conditions that are provided to credit card holders at the time the payment link is forwarded. Id. ¶ 9. CRIS does not have contact with zip line operators or make representations about them, and does not own or operate the zip line on which Plaintiff suffered injury. Id. ¶¶ 9, 11.

Blake Bellinger, Plaintiff's friend who lives in Alameda County, accompanied Plaintiff to Costa Rica in August 2012. Bellinger Decl. ¶ 1. Bellinger looked online for travel agencies to help plan the trip, and selected www.vacationscostarica.com. Id.; see also Reimer Decl. ¶ 2. Upon selecting this website, Bellinger typed in his name, email address and telephone number. Id. The same day he left his information on the website, he received a call from Shay Tippie. Id. ¶ 3. Bellinger talked to Tippie for about ten to twenty minutes about when Bellinger and his friends would be traveling to Costa Rica, and what they wanted to do on the trip. Id. Bellinger exchanged emails with Tippie as they refined their vacation plans. Id. ¶ 4. Tippie's emails identified Tippie as a travel consultant for Costa Rican Vacations. Id. ¶ 5. Bellinger believed Tippie to be an employee of CRV, and Tippie never informed Bellinger that she worked for another company. Id. ¶ 6.

On July 1, 2012, Tippie sent Bellinger a final itinerary, as well as a link to pay for the trip. Bellinger Decl. ¶ 7; Pahlke Decl. Ex. A at 205-06. Each traveler used the link to pay for the trips separately. Bellinger Decl. ¶ 7. When Bellinger clicked on the link, he was taken to the website, www.vacationscostarica.com. Id.; Pahlke Decl. Ex. A at 203, 206. He clicked on another link that allowed him to complete his purchase by providing standard information for paying with a credit card. Bellinger Decl. ¶ 7; Reimer Decl. ¶ 3; Pahlke Decl. Ex. A at 203. The entire time that he was making his payment, Bellinger believed that he was paying CRV, and at no time was he told that he was paying any company other than CRV. Bellinger Decl. ¶ 3; Reimer Decl. ¶ 5. Bellinger made one payment that covered the entire trip, including the excursions such as the zip line. Bellinger Decl. ¶ 8. Tippie had chosen the zip line tour company for the trip. Id. ¶ 9.

Three businesses use CRV as a DBA: International Travel Services ("ITS"), World Vacations (also known as "CVM") and Costa Rican Holidays UK. Pahlke Decl. Ex. A at 116 (Silva Depo.). These three companies work together in that ITS handles the vacation sales, Costa Rican Holiday UK helps the clients when they are actually in Costa Rica, and World Vacations maintains the contracts with providers of hotel tour transfers. Id. at 149-50. On CRV's website, www.vacationscostarica.com, the CEO is listed as Casey Halloran, and Anthony Silva is the Chief Culture Officer. Pahlke Decl. ¶¶ 3, 4. Silva is also the Chief Culture Officer of Costa Rica Holidays UK. Pahlke Decl. Ex. A at 11. CRV is also part of NAMU Travel Group, which is a group of companies that work together to offer vacations. Pahlke Decl. Ex. A at 69. Halloran is listed as the Chief Executive Officer on NAMU's website. Pahlke Decl. Ex. C. Richard Bexon, who is listed as the Chief Operating Officer of NAMU on its website, is also the owner of ITS and the Chief Operating Officer of Costa Rican Holidays UK. Pahlke Decl. Ex. A at 118; Ex. C. Rob Harper, who is listed on the NAMU website as the Business Development Director, is also an owner and General Manager of Panama Luxury Vacations, the other entity for which CRIS processes payments. Pahlke Decl. Ex. A at 441, 70, Ex. C. Finally, Roman Venegas, who is listed on the NAMU website as the Finance Director, is also the Finance Director for Costa Rican Holidays UK. Pahlke Decl. Ex. A at 180; Ex. C.

4

**Legal Standard**

In a motion to dismiss under 12(b)(2), the plaintiff bears the burden of establishing personal jurisdiction. Schwarzenegger v. Fred Martin Motors, 374 F.3d 797, 800 (9th Cir. 2004). The court may consider evidence presented in affidavits as well as order discovery to decide jurisdiction issues. Dole Food Co. v. Watts, 303 F.3d 1104, 1108 (9th Cir, 2002). Where the motion is based on written materials rather than an evidentiary hearing, a court inquires only "into whether the plaintiff's pleadings and affidavits make a prima facie showing of personal jurisidction." Fred Martin Motors, 374 F.3d at 800 (quoting Caruth v. Int'l Psychoanalytical Ass'n, 59 F.3d 126, 128 (9th Cir. 1995)). In the court's personal jurisdiction analysis, a plaintiff's uncontroverted allegations must be taken as true, and "conflicts between parties over statements contained in affidavits must be resolved in the plaintiff's favor." Id.

Proper personal jurisdiction over a defendant exists when permitted by a long-arm statute and when the exercise of that juridiction comports with federal due process. Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154 (9th Cir. 2006). In this diversity action, the Court looks to California's long-arm statute. Fred Martin Motors, 374 F.3d at 801. California's long-arm statute is coextensive with a federal due process analysis, and thus the jurisdictional analyses under California law and federal law are the same. Id. Under federal law, "[f]or a court to exercise personal jurisdiction over a nonresident defendant, that defendant must have at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice." Id. (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)).

Personal jurisdiction may be general or specific. Here, Plaintiffs only rely on specific jurisdiction. See Pl.'s Opp. at 10. A court may exercise specific jurisdiction over a nonresident defendant if the defendant's contacts with the forum give rise to the cause of action before the court. Doe v. Unocal Corp., 248 F.3d 915, 923 (9th Cir. 2001) (citing Hanson v. Denckla, 357 U.S. 235, 250-3 (1958)). The question in making this determination is "whether the cause of action arises out of or has a substantial connection to with" the contacts with the forum. Id. The Ninth Circuit has established a three-prong test for analyzing a claim of specific jurisdiction:

5

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof ("purposeful direction"); or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws ("purposeful availment");
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice.

Fred Martin Motors, 374 F.3d at 802.

"The plaintiff bears the burden of satisfying the first two prongs of the test." Id. If the plaintiff succeeds in showing the first two prongs are met, "the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." Id. (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 476-78 (1985)). In some instances, "jurisdiction may be exercised with a lesser showing of minimum contact than would otherwise be required if considerations of reasonableness dictate." Haisten v. Grass Valley Med. Reimbursement Fund, Ltd., 784 F.2d 1392, 1397 (9th Cir. 1986) (citing Burger King, 471 U.S. at 477).

**Discussion**

   **1.   Personal Jurisdiction**

Plaintiff's jurisdiction argument rests on its position that CRIS is an alter ego and ostensible agent of other CRV entities. Plaintiff argues that as an alter ego or ostensible agent, CRIS shares the minimum contacts of the other entities for purposes of establishing personal jurisdiction. However, as stated below, Plaintiff has not shown that CRIS is the alter ego or ostensible agent of any other entity, and therefore, Plaintiff has not established specific personal jurisdiction over CRIS.

   **A.   Alter Ego**

To establish alter ego liability, Plaintiff must make a prima facie case that: (1) there is such unity of interest and ownership that the separate personalities of the companies no longer exist; and (2) failure to disregard their separate identities would result in fraud or injustice. AT&T Co. v. Compagnie Bruxelles Lambert, 94 F.3d 586, 591 (9th Cir. 1996). In other words, "to avail [itself] of the doctrine, plaintiff must allege two elements: First, there must be such a unity of

interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist. Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone." Wehlage v. EmpRes Healthcare, Inc., 791 F.Supp.2d 774, 782 (N.D.Cal.2011) (citing Sonora Diamond Corp. v. Superior Court, 83 Cal.App.4th 523, 526 (2000)). When a plaintiff makes a prima facie showing of alter ego liability, "the Court may pierce the corporate veil jurisdictionally and attribute contacts accordingly." NuCal Foods, Inc. v. Quality Egg LLC, 887 F. Supp. 2d 977, 993 (E.D. Cal. 2012) (internal citation omitted) ("This stringent pleading requirement reflects the principle that "[d]isregarding the corporate entity is recognized as an extreme remedy, and '[c]ourts will pierce the corporate veil only in exceptional circumstances.'").

The unity prong of the alter ego test requires a showing that the parent controls the subsidiary "to such a degree as to render the latter the mere instrumentality of the former." Unocal Corp., 248 F.3d at 927. For example, "where a parent corporation uses its subsidiary 'as a marketing conduit' and attempts to shield itself from liability based on its subsidiaries' activities, piercing the corporate veil is appropriate and the alter-ego test is satisfied. That test is also satisfied where the record indicates that the parent dictates '[e]very facet [of the subsidiary's] business - from broad policy decisions to routine matters of day-to-day operation [.]'" Id. (internal citation omitted).

In an attempt to satisfy the unity element, Plaintiff points out that CRIS and CRV have the same founders, Silva and Halloran. The founders are the President and Vice-President of CRIS, while also the CEO and Chief Culture Officer of CRV and of NAMU Travel Group. The sole purpose of CRIS is to process payments for CRV, and CRIS does not intend to add any other clients. CRIS does not have any assets aside from the funds it collects and its laptop. CRIS also does not follow basic corporate formalities such as holding annual meetings. Silva testified that users cannot directly contact CRIS, and if a customer needs to speak with CRIS, he would need to contact the sales representative (not employed by CRIS) with whom he booked his travel. From this evidence, Plaintiff argues that CRIS and CRV are parts of the "cohesive whole," and that any other finding would result in "fraud or injustice" by permitting CRIS to be an integral part of the

CRV companies, but avoid personal jurisdiction on the basis of those other companies' contacts with California.

Defendant, however, counters that CVM and CRIS are two separate entities with different owners, and with operations based on different countries. CVM and CRIS negotiated the payment processing agreement at arm's length. CRIS does not have any subsidiary companies. Hanson Decl. Ex. A2 at 236. The fact that its owners may be involved in other companies is not probative of whether there is an alter ego relationship. See Eclectic Properties E., LLC v. The Marcus & Millichap Co., 2012 WL 713289, at *5 (N.D. Cal. Mar. 5, 2012) (finding that the occupation of the same headquarters, sharing of employees and shared operating principles and corporate philosophy were not enough to show alter ego liability: "The court noted that factors signaling it would be inequitable to respect separate corporate identities included inadequate capitalization, commingling of assets, [or] disregard of corporate formalities.") (internal citation omitted). Finally, CRIS is not undercapitalized. Hanson Decl. Ex. A2 at 157-58.

Plaintiff has not shown a sufficient unity of interest between CRIS and the CRV parties. There has been no showing that CRV controls CRIS to such a degree that CRIS is a "mere instrumentality" of CRV. Even if the entities have common owners, there is no evidence that one controls the other. Further, even if there were a unity of interest, Plaintiff has not made a showing that inequity would result unless the Court disregards the corporate form. See NuCal, 887 F. Supp. 2d at 993 ("To prove injustice, the plaintiff must be more than just a creditor attempting to recover on unsatisfied debts; it must show that a defendant's conduct amounted to bad faith."). Plaintiff has not made a prima facie showing of alter ego.

### B. Ostensible agency

Under California law, "an agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Cal. Civil Code § 2300. However, "[t]he agency test is satisfied by a showing that the subsidiary functions as the parent corporation's representative in that it performs services that are 'sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar

8

services.'" Doe v. Unocal Corp., 248 F.3d 915, 928 (9th Cir. 2001); see also NuCal Foods, Inc. v. Quality Egg LLC, 887 F. Supp. 2d 977, 995 (E.D. Cal. 2012) ("At an irreducible minimum, the general agency test requires that the agent perform some service or engage in some meaningful activity in the forum state on behalf of its principal such that its presence substitutes for presence of the principal."). "A principal is bound by acts of his agent, under a merely ostensible authority, to those persons only who have in good faith, and without want of ordinary care, incurred a liability or parted with value, upon the faith thereof." Cal. Civ. Code § 2334.

Plaintiff argues that the CRV entities held CRIS out as their ostensible agent because its salespeople presented customers with CRIS's link for payment processing, creating the impression of one seamless shopping experience with one company, CRV. Plaintiff argues that the payment link was built into the CRV website so that customers would have no reason to know that the payment was being processed by any company other than CRV.

Defendant points out, however, there is no parent-subsidiary relationship between CRV and CRIS. In addition, Plaintiff has not provided evidence that either entity performs tasks that the other would have to complete itself otherwise. In fact, Silva testified that it would not be fair to say that CRV would not be able to operate without using CRIS because there was a time when CRV used a different payment processor. Thus, Plaintiff has not made a showing of ostensible agency for purposes of using any CRV entity's contacts with California for the jurisdictional analysis.

### C. Specific Personal Jurisdiction

#### i. Purposeful Direction

The first prong of the specific jurisdiction analysis comprises both "purposeful direction" and "purposeful availment." Mavrix Photo Inc. v. Brand Technologies Inc., 647 F.3d 1218, 1228 (9th Cir. 2011). In tort cases, the Ninth Circuit focuses on "purposeful direction," and applies the Calder effects test. Calder v. Jones, 465 U.S. 783, 789-90 (1984); see Facebook, Inc. v. Pedersen, 868 F. Supp. 2d 953, 958 (9th Cir. 2012) (finding that in a case alleging "tort-like causes of action" the Calder effects test is the proper framework for analyzing specific personal jurisdiction); Mavrix, 657 F.3d at 1228 (stating "we have explained that in cases involving

9

tortious conduct, we most often employ a purposeful direction analysis."); Fred Martin Motors, 374 F.3d at 802 (explaining that "[a] purposeful availment analysis is most often used in suits sounding in contract. A purposeful direction analysis, on the other hand, is most often used in suits sounding in tort.") (internal citations omitted). The Calder effects test for purposeful direction consists of three elements, which ask whether Defendant: "(1) commit[ted] an intentional act, (2) expressly aimed at the forum state, and (3) causing harm that the nonresident defendant knew would likely be suffered in the forum state." Facebook, 868 F. Supp 2d at 958 (citing Calder, 465 U.S. 783).

### a. Intentional Act

In the Calder effects analysis, "intentional act" has a specialized meaning. Fred Martin Motors, 374 F.3d at 806. The Ninth Circuit "construe[s] 'intent' in the context of the 'intentional act' test as referring to an intent to perform an actual, physical act in the real world, rather than an intent to accomplish a result or consequence of that act." Id. "Intentional act" is "an external manifestation of the actor's will . . . not includ[ing] any of its results, even the most direct, immediate, and intended. (Thus, if the actor, having pointed a pistol at another, pulls the trigger, the act is the pulling of the trigger and not the impingement of the bullet upon the other's person.)" Wash. Shoe Co. v. A-Z Sporting Goods Inc., 704 F.3d 668 (9th Cir. 2012) (citing Fred Martin Motor, 374 F.3d at 806 and Restatement (Second) of Torts § 2 & cmt. c (1964)) (internal quotations omitted).

Here, although CRIS argues that Plaintiff has not shown an intentional act because clicking on a link is not an "actual, physical result in the real world," (Mot. at 9), the focus is on whether CRIS, not Plaintiff, engaged in an intentional act. Further, to the extent that CRIS is arguing that actions carried out on a computer do not meet the intent requirement under the Calder effects test, that argument is not persuasive. See Facebook, 868 F. Supp 2d at 958 (holding that a defendant who registered website domains, for the purposes of a Calder effects analysis, has committed an intentional act). Here, CRIS operated a payment link on the internet, which was an intentional act that met the intent requirement under this analysis. See Fred Martin Motor, 374 F.3d at 806.

### b. Act Expressly Aimed at Forum State

10

The "express aiming" prong, like all minimum contacts inquiries, focuses on "the relationship among the defendant, the forum, and the litigation." Calder, 465 U.S. at 788. The Ninth Circuit has repeatedly found that "the express aiming requirement is satisfied, and specific jurisdiction exists, when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." Wash. Shoe, 704 F.3d at 675 (quoting Dole Food, 303 F.3d 1104, 1111 (9th Cir. 2002)); Bancroft & Masters, Inc. v. Augusta Nat'l Inc., 223 F.3d 1082, 1087 (9th Cir. 2000).

In Walden v. Fiore, 134 S. Ct. 1115 (2014), the Supreme Court emphasized that jurisdiction depends on a defendant's contacts with the forum state, rather than simply on a defendant's contact with a plaintiff who resides in a forum. The Supreme Court stated that "when viewed through the proper lens – whether the *defendant's* actions connect him to the *forum* – [the defendant] formed no jurisdictionally relevant contacts with [the forum state]." Id. at 1124. The Court found, therefore, that the defendant's actions in directing his conduct at the plaintiffs whom he knew had connections with the forum state did not create minimum contacts with the forum state. Id. at 1125 ("Petitioner's actions in Georgia did not create sufficient contacts with Nevada simply because he allegedly directed his conduct at plaintiffs whom he knew had Nevada connections. Such reasoning improperly attributes a plaintiff's forum connections to the defendant and makes those connections 'decisive' in the jurisdictional analysis."). Thus, in order to satisfy this element of the test, Plaintiff must show that CRIS purposefully directed its actions at the forum state. Directing contacts toward a plaintiff who happens to be a resident of the forum state does not by itself establish jurisdiction, even if the defendant knows the plaintiff is a resident of the forum state. See Walden, 134 S. Ct. at 1121-23.

Plaintiff contends that CRIS solicited business in the forum state which resulted in contract negotiations and the transaction of business, thus providing for specific personal jurisdiction. Pl.'s Opp. at 12. "[A] a non-resident defendant's act of soliciting business in the forum state will generally be considered purposeful availment if that solicitation results in contract negotiations or the transaction of business." Shute v. Carnival Cruise Lines, 897 F.2d 377, 381 (9th Cir. 1990). Further, a single "upsell" of a consumer good while on a phone call can be the basis for

11

establishing personal jurisdiction.  See West Corp. v. Superior Court, 116 Cal.App.4th 1167, 1176 (2004) ("We conclude telemarketers who upsell a product to residents of a forum state have purposefully availed themselves of the privileges of conducting activities within the forum state.").  Finally, in Cohen v. Timbers Co., 2006 WL 228955, at *1 (N.D. Cal. Jan. 30, 2006), the Court found that there were sufficient minimum contacts for purposes of personal jurisdiction where the plaintiff saw an advertisement for property in Mexico while on a flight to that destination, and after speaking with the defendant's sales agent, the plaintiff returned home but was contacted several times by the agent and purchased a unit after which he was injured there.  These cases, however, are distinguishable.  In Cohen, the defendant engaged in marketing and then consummated real estate purchases with Plaintiff; in Shute, the defendant affirmatively advertised its cruises in the forum state; and in West, the defendant spoke with the plaintiff on the phone and upsold a product to him.

Plaintiff argues that this case is most like Cohen.  First, Plaintiff argues that "CRIS and the CRV entities solicited sales to California residents, including Mr. Reimer."  Pl.'s Opp. at 12.  Second, the "CRIS and the CRV entities had a phone conversation with Mr. Bellinger and then exchanged several e-mails with him."  Id.  Third, CRIS and the CRV entities "provid[ed] an online system" through which Plaintiff and his traveling companions could pay for their trip.  Id.  Plaintiff also argues that the contacts in this case go beyond what was sufficient in West to find personal jurisdiction because here, Tippie had an ongoing email conversation with Bellinger when making this sale, not just a single phone call.

However, without a finding of alter ego or agency, there is no evidence that CRIS engaged in any act aimed at California.  Instead, there is evidence that CRIS did not market its services at all.  It is undisputed that the payment link was provided by CRV, and that Bellinger and Plaintiff did not know that they were dealing with anyone other than CRV.  It is undisputed that CRIS had no direct contact with Plaintiff.  Thus, Plaintiff has not shown any contact aimed at the forum state.

12

### c. Causing Harm that the Defendant Knew Would Likely Be Suffered in the Forum State

Plaintiff has not shown that actions by CRIS caused harm that CRIS knew would likely be suffered in the forum state. The Court is persuaded by CRIS's argument that it would not be foreseeable that providing a payment link would cause a personal injury to someone from California on vacation in Costa Rica, particularly because CRIS does not recommend or encourage any specific vacation, excursion or vendor. Silva Decl. ¶ 9.

Because Plaintiff has not satisfied the first element of the specific personal jurisdiction analysis, the Court need not reach the remaining two elements. Thus, Defendant's motion to dismiss based on lack of personal jurisdiction is granted.

## 2. *Forum non conveniens*

Alternatively, CRIS seeks dismissal of this case based on *forum non conveniens*, arguing that the more convenient forum is Costa Rica. A party moving to dismiss based on *forum non conveniens* bears the burden of showing: (1) that there is an adequate alternative forum; and (2) that the balance of private and public interest factors favors dismissal. See Lueck v. Sundstrand Corp., 236 F.3d 1137, 1142–43 (9th Cir. 2001). The plaintiff's choice of forum will not be disturbed unless the "private interest" and "public interest" factors strongly favor trial in the foreign country. See Dole Foods Co. v. Watts, 303 F.3d 1104, 1118 (9th Cir. 2002) (citing Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1334 (9th Cir. 1984)). *Forum non conveniens* is "an exceptional tool to be employed sparingly, [not a] ... doctrine that compels plaintiffs to choose the optimal forum for their claim." Dole Foods, 303 F.3d at 1118.

Private interest factors include: (1) relative ease of access to sources of proof; (2) the availability of compulsory process for attendance of unwilling witnesses, and cost of obtaining attendance of willing witnesses; and (3) all other factors that render trial of the case expeditious and inexpensive. See Dole Foods, 303 F.3d at 1119. The public interest factors include: (1) court congestion; (2) imposition of jury duty on the people of a community that has no relation to the litigation; and (3) local interest in having localized controversies decided at home. See Dole Foods, 303 F.3d at 1119. Ultimately, the court "must balance the preference accorded plaintiff's

13

choice of forum with the burden of litigating in an inconvenient forum." Decker Coal, 805 F.2d at 843.

      Plaintiff argues that Costa Rica is not a more convenient forum than California. As to the availability of an alternative forum, Plaintiff argues that CRIS could contest the exercise of jurisdiction over it in a Costa Rican court, most particularly, because it is a Delaware company licensed to do business in Florida. However, at the hearing, CRIS agreed to submit to jurisdiction in Costa Rica. Plaintiff also argues that third party Kaiser Permanente has a contractual right to reimbursement based on a medical lien, and there is no showing that Kaiser is subject to jurisdiction in Costa Rica. However, the Kaiser lien is an ancillary issue and the *forum non conveniens* decision does not hinge on it. It appears that Plaintiff would need to litigate or negotiate the lien separately, and Plaintiff does not make any argument to the contrary or show that he cannot litigate the lien after a Costa Rican judgment. This factor does not weigh against dismissal.

      As to the private factors in the analysis, Plaintiff argues that CRIS overlooks the fact that witnesses as to damages and liability reside in the Bay Area, including Plaintiff's two vacation companions, Plaintiff's treating doctors, and his family and friends. Reimer Decl. ¶ 8; Pahlke Decl. ¶ 11. At the hearing, Plaintiff stated that his claims did not depend on the testimony of Costa Rican witnesses. However, the physical evidence and percipient witnesses (except for Plaintiff's traveling companions) to the accident and Plaintiff's initial treatment are in Costa Rica. See Skee Ball, Inc. Full Circle United, 2011 WL 6749013, at *7 (N.D. Cal. Dec. 22, 2011) ("Additionally, the Court should consider not only the number of witnesses located in the respective districts, but also the nature and quality of their testimony in relationship to the issues in the case.") (internal citation omitted). CRIS also notes that if the case proceeds in California, crucial witnesses in Costa Rica will be beyond the court's subpoena power, including employees of EcoGlide (the operator of the zip line) and Aventuras Arenal (the entity that booked the zip line), which are not defendants in this case. Further, this is not a case based solely on documents or other evidence that would be easily transported to California because the zip line and the location itself may well be crucial pieces of evidence. See Contact Lumber Co. v. P.T. Moges

14

Shipping Co., 918 F.2d 1446, 1451 (9th Cir. 1990) ("Evidence that will illuminate the liability issues is largely unavailable in the United States. The vessel's characteristics and preparation, the putative negligence of the seamen, and the care of the damaged cargo are best investigated in the Philippines; moreover, much of this information is accessible in or near Manila."). On balance, the private factors favor litigation in Costa Rica.

Finally, neither party makes a strong showing as to the public factors in the analysis, so these factors are essentially neutral. On balance, Costa Rica is a more convenient forum. See Loya v. Starwood Hotels & Resorts Worldwide, 583 F.3d 656, 664-66 (9th Cir. 2009) ("A district court has discretion to decide that a foreign forum is more convenient."). Thus, Defendant's motion to dismiss is also granted on the alternative ground of *forum non conveniens*.

**Conclusion**

Defendant's motion to dismiss is granted for lack of personal jurisdiction, and in the alternative based on f*orum non conveniens*.

**IT IS SO ORDERED**.

Dated: October 30, 2014

_____
ELIZABETH D. LAPORTE
United States Magistrate Judge

15